# IN THE COURT OF APPEALS 06/18/96

## OF THE

## STATE OF MISSISSIPPI

### NO. 93-KA-00208 COA

WILLIE A. GARDNER

APPELLANT

v.

STATE OF MISSISSIPPI

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. EUGENE M. BOGEN

COURT FROM WHICH APPEALED: WASHINGTON COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

ROBERT E. BUCK

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL

BY CHARLES E. MARIS, UR.

DISTRICT ATTORNEY: JOYCE I. CHILES

NATURE OF THE CASE: CRIMINAL -- BUSINESS BURGLARY; HABITUAL OFFENDER

TRIAL COURT DISPOSITION: GUILTY -- SENTENCED TO SEVEN YEARS IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE

BEFORE BRIDGES, P.J., BARBER, KING, AND SOUTHWICK, JJ.

BARBER, J., FOR THE COURT:

Willie Gardner appeals from his conviction for the crime of business burglary. For this felony, Gardner was sentenced as a habitual offender to the custody of the Mississippi Department of Corrections for a term of seven years. Finding no reversible error in the proceedings below, we affirm.

## I. FACTS

Lawrence C. McCloud owns McCloud's Pawn Shop in Greenville. On May 31, 1991, the pawn shop was burglarized, and a number of items totaling between $3,000 and $4,000 in value were stolen. Among these stolen items were firearms, jewelry, and compact disc players.

McCloud subsequently offered a reward for information leading to the conviction of the person or persons responsible for the burglary. In response to the reward offer, McCloud received information from Gary Rayford, who resided with Gardner at 143 North Poplar in Greenville. McCloud then notified Officer Kirby Slayton of the Greenville Police Department. Upon investigating the burglary further, Slayton found various stolen items at another Greenville pawn shop and discovered that these items had been pawned by Charlotte Denard, Gardner's sister. Based upon this and Rayford's information, Slayton arrested a man named Larry Atley and procured a warrant for Gardner's arrest.

On the date of the burglary, Gardner was also sharing the Poplar residence with his mother, Thelma Griffin, Angela Denard, Carla Denard and Atley. Both Griffin and Rayford subsequently gave signed, written statements to Slayton. The statements contained accounts of conversations between Atley and Gardner, who described how they broke into the pawn shop and stole the various items.

On August 1, 1991, Charlotte Denard and Atley went to Memphis, Tennessee, under police supervision to visit Gardner, who by that time was living in Memphis with his girlfriend. Atley and Denard were wearing a hidden radio transmitter and a tape recorder as they engaged Gardner about the details of the burglary and ultimate whereabouts of the stolen items. At one point in the conversation, Gardner expressed his concern that he could be subject to federal prosecution for transporting stolen firearms across state lines. At another point in the conversation, Gardner expressed his displeasure with various members of his family for communicating to the police the details of his involvement in the burglary.

Gardner was indicted as a habitual offender for the crime of burglary of a business. He was tried on August 25, 1992, and the jury found him guilty. The trial court sentenced him to a seven-year term of imprisonment with no the possibility of parole. From this conviction and sentence, Gardner now appeals.

## II. DISCUSSION

A) Did the Trial Court Err in Allowing the Written Statements of Rayford and Griffin to Come Into

Evidence?

The prosecution called both Griffin and Rayford to the stand to testify as to their knowledge of Gardner's involvement in the crime. When it became clear that both of these witnesses were reluctant to testify against Gardner, the prosecution obtained permission from the trial court to impeach these witnesses as hostile witnesses. The prosecution did this by confronting the witnesses with the prior written statements that they had given to Slayton. Over Gardner's objection, the trial court also allowed these written statements to come into evidence as marked exhibits. Gardner asserts that this last ruling was erroneous. We agree.

"Where the non-party witness admits having made the prior, out-of-court statement, the statement where reduced to written form, should never be introduced into evidence." *Moffett v. State*, 456 So. 2d 714, 719 (Miss. 1984). Accordingly, the trial court erred by allowing the jury to view Griffin's and Rayford's prior written statements as marked exhibits. Nonetheless, we decline to hold that this error warrants reversal. Upon being confronted with their previous statements, both Rayford and Griffin did not disavow them but instead, to a large measure, affirmed the truth of the facts stated therein. Thus, any harm which accrued to Gardner as a result of having the jury actually have the opportunity to view the written statements themselves was of little consequence. Such error was therefore harmless.

B) Did the Trial Court Err By Permitting the Prosecution to Lead Its Witnesses on Direct Examination?

During trial, the prosecution called Charlotte Denard to the stand. During the course of its direct examination, and over the objection of the defense, the prosecution was allowed to question her by using leading questions. Gardner now asserts that this ruling by the trial court was erroneous.

Rule 611(c) of the Mississippi Rules of Evidence states:

> Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily, leading questions should be permitted on cross-examination. *When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.*

M.R.E. 611(c) (emphasis added). After examining the record, we are of the opinion that even though Charlotte Denard was called to the stand by the prosecution, the tone and substance of her answers evinced recalcitrance on her part. Under such circumstances, we believe that Denard qualified as a hostile witness, and the trial judge did not abuse his discretion in allowing the prosecution to examine her by the use of leading questions.

In the alternative, even were we to hold that the judge abused his discretion in allowing the prosecution to direct leading questions to Denard, we would still find no ground for reversal. In order to justify a reversal because improper leading questions were allowed, it is necessary that the "question shall have influenced the answer and that injury resulted." *Williams v. State*, 317 So. 2d

379, 381 (Miss. 1975). Gardner has failed to demonstrate how he was injured by the prosecution's use of leading questions. Therefore, a second reason exists for denying reversal on this issue.

C) Was the Jury's Verdict Supported by Sufficient Evidence?

Gardner's final assignment of error is that the jury's verdict was supported by insufficient evidence. To test the sufficiency of the evidence of a crime, the Mississippi Supreme Court has provided the following standards:

> [W]e must, with respect to each element of the offense, consider all of the evidence - not just the evidence which supports the case for the prosecution - in the light most favorable to the verdict. The credible evidence which is consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair minded jurors could only find the accused not guilty.

*Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987) (citations omitted).

After having reviewed the record, we hold Gardner's last assignment of error to be without merit. Upon conducting his own investigation into the burglary, Slayton discovered that Charlotte Denard, Gardner's sister and a fellow occupant of the house in which Gardner lived at the time of the burglary, had pawned some of the stolen items. When Rayford was confronted with his previous written statement in which he related how Atley and Gardner described and admitted their role in the burglary, Rayford testified that "basically everything in that statement is true and correct." Denard admitted that she agreed to participate in the attempt to record Gardner making incriminating statements as part of a deal in which she would undergo a reduced penalty for the crime of receiving stolen merchandise. Denard also testified that when she visited Gardner in Memphis, Gardner expressed his concern about how he could now be prosecuted for the federal crime of transporting stolen firearms across state lines and his dissatisfaction with other members of his family for having talked to the police about his role in the burglary. Finally, Griffin admitted that on one occasion following the burglary, she drove Gardner to Memphis and witnessed him with a strange-looking handgun in his possession. Clearly, the sum of this evidence is sufficient to support Gardner's guilty verdict.

III. CONCLUSION

For the foregoing reasons, the judgment of the Circuit Court of Washington County is affirmed.

**THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF BURGLARY OF A BUSINESS AND SENTENCE AS A HABITUAL OFFENDER TO SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE ASSESSED TO WASHINGTON COUNTY.**

**FRAISER, C.J., BRIDGES AND THOMAS, P.JJ., COLEMAN, DIAZ, KING, McMILLIN,**

**PAYNE, AND SOUTHWICK, JJ., CONCUR.**